UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

KARLENE S.,

              Plaintiff,

      v.

COMMISSIONER OF SOCIAL SECURITY,

              Defendant.
_____

**DECISION AND ORDER**

6:21-CV-06005 EAW

## <u>INTRODUCTION</u>

Represented by counsel, plaintiff Karlene S. ("Plaintiff") brings this action pursuant to Title XVI of the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying her application for supplemental security income ("SSI"). (Dkt. 1). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' cross motions for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) (Dkt. 8; Dkt. 9), and Plaintiff's reply (Dkt. 10). For the reasons discussed below, Plaintiff's motion (Dkt. 8) is granted to the extent that the matter is remanded for further administrative proceedings and the Commissioner's motion (Dkt. 9) is denied.

## BACKGROUND

Plaintiff filed her application for SSI on May 25, 2018.  (Dkt. 5 at 14, 184-89).[1]  In her application, Plaintiff alleged disability beginning August 1, 2008.  (*Id.* at 14, 184).  Plaintiff later amended her alleged onset date to May 25, 2018, the protective filing date.  (*Id.* at 14, 45).  Plaintiff's application was initially denied on August 20, 2018.  (*Id.* at 14, 107-18).  At Plaintiff's request, a video hearing was held before administrative law judge ("ALJ") David Neumann on February 7, 2020.  (*Id.* at 38-91).  On March 27, 2020, the ALJ issued an unfavorable decision.  (*Id.* at 14-27).  Plaintiff requested Appeals Council review, and her request was denied on November 6, 2020, making the ALJ's determination the Commissioner's final decision.  (*Id.* at 5-10).  This action followed.

## LEGAL STANDARD

### I.    District Court Review

"In reviewing a final decision of the [Social Security Administration ("SSA")], this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard."  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation omitted); *see also* 42 U.S.C. § 405(g).  The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence.  42 U.S.C. § 405(g).  "Substantial evidence means more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate

---

[1]    When referencing the page number(s) of docket citations in this Decision and Order, the Court will cite to the CM/ECF-generated page numbers that appear in the upper righthand corner of each document.

to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation

omitted).  It is not the Court's function to "determine *de novo* whether [the claimant] is

disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted); *see also*

*Wagner v. Sec'y of Health & Human Servs*., 906 F.2d 856, 860 (2d Cir. 1990) (holding that

review of the Secretary's decision is not *de novo* and that the Secretary's findings are

conclusive if supported by substantial evidence).  However, "[t]he deferential standard of

review for substantial evidence does not apply to the Commissioner's conclusions of law."

*Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003) (citing *Townley v. Heckler*, 748 F.2d

109, 112 (2d Cir. 1984)).

## II.   <u>Disability Determination</u>

An ALJ follows a five-step sequential evaluation to determine whether a claimant is

disabled within the meaning of the Act.  *See Bowen v. City of N.Y.*, 476 U.S. 467, 470-71

(1986).  At step one, the ALJ determines whether the claimant is engaged in substantial

gainful work activity.  *See* 20 C.F.R. § 416.920(b).  If so, the claimant is not disabled.  If

not, the ALJ proceeds to step two and determines whether the claimant has an impairment,

or combination of impairments, that is "severe" within the meaning of the Act, in that it

imposes significant restrictions on the claimant's ability to perform basic work activities.

*Id*. § 416.920(c).  If the claimant does not have a severe impairment or combination of

impairments, the analysis concludes with a finding of "not disabled."  If the claimant does

have at least one severe impairment, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically

equals the criteria of a listed impairment ("Listing") in Appendix 1 of Subpart P of

Regulation No. 4 (the "Listings").  *Id*. § 416.920(d).  If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (*id*. § 416.909), the claimant is disabled.  If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments.  *See id*. § 416.920(e).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits the claimant to perform the requirements of his or her past relevant work.  *Id*. § 416.920(f).  If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled.  *Id*. §  416.920(g).  To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of the claimant's age, education, and work experience.  *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation omitted); *see also* 20 C.F.R. § 416.960(c).

## DISCUSSION

### I.    The ALJ's Decision

In determining whether Plaintiff was disabled, the ALJ applied the five-step sequential evaluation set forth in 20 C.F.R. § 416.920.  At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful work activity since May 25, 2018, the application date.  (Dkt. 5 at 16).

At step two, the ALJ found that Plaintiff suffered from the severe impairments of mild degenerative disc disease of the lumbar spine, degenerative changes of the cervical spine, obesity, chronic obstructive pulmonary disorder (COPD), and major depressive disorder.  (*Id.* at 16).  The ALJ further found that Plaintiff's medically determinable impairments of hypertension, lymphoma in remission, tongue lymphoma in remission since 2014, and gastroesophageal reflux disease (GERD) were non-severe.  (*Id.*).  The ALJ deemed Plaintiff's headaches to not be a medically determinable impairment.  (*Id.* at 17).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any Listing.  (*Id.*).  The ALJ particularly considered the criteria of Listings 1.04, 3.02, 3.03, and 12.04, and considered Plaintiff's obesity in reaching his conclusion.  (*Id.* at 18).

Before proceeding to step four, the ALJ determined that Plaintiff retained the RFC to perform light work as defined in 20 C.F.R. § 416.967(b) with the following additional limitations:

> [Plaintiff] is limited to simple routine repetitive work at an SVP of 1 or 2. She can lift and carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk for 6 hours in an 8-hour workday; sit for 6 hours in an 8-hour workday; and push/pull with the upper/lower extremities within the aforementioned weight restrictions.  She should avoid concentrated pollutants and temperature extremes.  She can occasionally climb ramps and stairs.  She can occasionally balance, stoop, kneel, crouch, and crawl.

(*Id.* at 20).

At step four, the ALJ found that Plaintiff had no past relevant work.  (*Id.* at 25).  At step five, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that, considering Plaintiff's age, education, work experience, and RFC, there were jobs existing

in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of: sorter, marker, and order caller.  (*Id.* at 26).  Accordingly, the ALJ found that Plaintiff was not disabled as defined in the Act.  (*Id.*).

## II.    <u>Remand for Further Administrative Proceedings is Required</u>

Plaintiff asks the Court to reverse the Commissioner's decision and remand for additional administrative proceedings, arguing that the ALJ erred at step two by failing to find Plaintiff's headaches as a severe impairment or accounting for the limitations from this impairment in the RFC.  (Dkt. 8-1 at 13-20).  In response, the Commissioner argues that substantial evidence supports the ALJ's RFC and that the ALJ properly weighed the evidence before him.  As further explained below, the Court agrees that remand for further proceedings is necessary.

### A.    <u>Step Two Evaluation</u>

In deciding a disability claim, an ALJ is tasked with "weigh[ing] all of the evidence available to make an RFC finding that [is] consistent with the record as a whole."  *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013).  An ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in his decision."  *Id*.  However, an ALJ is not a medical professional, and "is not qualified to assess a claimant's RFC on the basis of bare medical findings."  *Ortiz v. Colvin*, 298 F. Supp. 3d 581, 586 (W.D.N.Y. 2018) (quotation omitted).  In other words:

> An ALJ is prohibited from "playing doctor" in the sense that an ALJ may not substitute his own judgment for competent medical opinion.  This rule is most often employed in the context of the RFC determination when the claimant argues either that the RFC is not supported by substantial evidence or that the ALJ has erred by failing to develop the record with a medical opinion on the

RFC.

*Quinto v. Berryhill*, No. 3:17-cv-00024 (JCH), 2017 WL 6017931, at *12 (D. Conn. Dec. 1, 2017) (quotation and citation omitted).  "[A]s a result[,] an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence."  *Dennis v. Colvin*, 195 F. Supp. 3d 469, 474 (W.D.N.Y. 2016) (quotation and citation omitted).

At step two, "[a]n impairment is 'severe' if it 'significantly limits [the claimant's] physical or mental ability to do basic work activities.'"  *Eralte v. Colvin*, No. 14 Civ. 1745(JCF), 2014 WL 7330441, at *10 (S.D.N.Y. Dec. 23, 2014) (quoting 20 C.F.R. § 404.1520(c)).  "When the parties disagree over the effect of the ALJ's failure to include a condition at step two, resolution of this issue comes down to a question of whether there was substantial evidence to support the ALJ's conclusion that [the omitted condition] should not be included as a severe impairment."  *Id.* (quotations and citations omitted) (alteration in original); *Cwiklinski v. Comm'r of Soc. Sec.*, No. 18-CV-1204-FPG, 2020 WL 1131223, at *3 (W.D.N.Y. Mar. 9, 2020) ("Where a claimant produces some evidence of an impairment, the Commissioner may conclude that the impairment is non-severe only where the medical evidence 'establishes only a slight abnormality or combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work.'" (quoting SSR 85-28, 1985 WL 56856, at *3 (1985))).  "[T]he severity prong is intended as a *de minimis* standard to screen out only those claimants with 'slight' limitations that 'do not significantly limit any basic work activity.'"  *Vicari v. Astrue*, No. 1:05-cv-4967-ENV-VVP, 2009 WL 331242, at *3 (E.D.N.Y. Feb. 10, 2009) (quoting *Bowen v. Yuckert*, 482 U.S. 137, 158 (1987)); *Melendez v. Comm'r of Soc. Sec.*, No. 17-CV-299-FPG,

2020 WL 4274510, at *2 (W.D.N.Y. July 24, 2020) ("In other words, the analysis at step two is a threshold test designed to screen out *de minimis* or totally groundless claims." (quotations and citations omitted)); *Cooper v. Berryhill*, No. 17-CV-6782-JWF, 2019 WL 1233686, at *1 (W.D.N.Y. Mar. 15, 2019) ("Although plaintiff bears the burden of proof at step two, it is not a heavy burden.").

### B.    Plaintiff's Headaches

Here, in assessing Plaintiff's headaches, the ALJ concluded that "the record lacks the evidence necessary to demonstrate that this condition is a medically determinable mental impairment that causes more than a minimal limitation on work-related functioning." (Dkt. 5 at 17).   He explained his reasoning for that conclusion as follows:

> Although the claimant reported recurring headaches that are exacerbated in the supine position or with maneuvers, MRI of the claimant's brain showed no evidence of intracranial mass, lesion, or thrombosis (Exhibit 10F/58-59). Magnetic resonance venography of the brain was normal (Exhibit 10F/60). At times during treatment, her headaches was evaluated as a symptom of her intracranial hypertension (Exhibits 2F/269, 343, 371; 3F; 10F/87; 14F/16, 45; See, SSR 19-4p).   Moreover, there is no documented descriptions of a headache event or information about alteration of consciousness that include inattentiveness or lack of awareness of one's surroundings and external phenomena.   Further, physical exams revealed no acute neurological deficits (Exhibit 3F/473; 14F/13; 17F/56).    In addition, the record shows her headaches improved with lumbar puncture treatment or medication (Exhibits 10F/136; 14F/22; 17F/54, 62).   The undersigned finds the claimant's headaches are a symptom of her established medically determinable impairments.   Accordingly, the undersigned has considered the claimant's headaches in relation to her medically determinable impairments. Categorizing headaches as a severe medically determinable impairment would not reduce claimant's residual functional capacity beyond the limitations assessed below.

(*Id.*).

As noted, the ALJ highlighted Plaintiff's largely normal neurological results and

lack of objective findings in discounting the severity of her headaches.  But corroborating objective evidence is not necessary to establish the presence of headaches.  *Sandra C. v. Saul*, No. 3:19-CV-942(RAR), 2021 WL 1170285, at \*6 (D. Conn. Mar. 29, 2021) ("To the extent that the ALJ found a lack of objective medical evidence weighed against a determination that plaintiff's headaches were a severe impairment, courts in the Second Circuit have not required that an impairment, including migraines, be proven through objective clinical findings." (quotation and citations omitted)); *Ramona R. v. Saul*, No. 19-CV-1630F, 2021 WL 732694, at \*4 (W.D.N.Y. Feb. 25, 2021) ("In particular, district courts within the Second Circuit, including this court, have repeatedly acknowledged that there is no objective test for migraine headaches."); *Brandy Marie T.A. v. Comm'r of Soc. Sec.*, 6:18-CV-0510 (DEP), 2019 WL 2264977, at \* 4 (N.D.N.Y. May 28, 2019) ("[M]any, many cases have noted the elusive nature of migraines and have rejected opinions of ALJs that have found migraines not to be severe based upon the lack of objective evidence." (citing cases)); *Hudson v. Comm'r of Soc. Sec.*, No. 5:10-CV-300, 2011 WL 5983342, at \*4 (D. Vt. Nov. 2, 2011) (holding that "subjective pain may serve as the basis for establishing disability, even if such pain is unaccompanied by positive clinical findings or other 'objective' medical evidence," which "particularly applies with respect to headaches, which are often not reflected in laboratory tests or other medical evidence"), *report and recommendation adopted*, 2011 WL 6002466 (D. Vt. Nov. 30, 2011).  While a lack of objective findings is not wholly irrelevant, *see Marozzi v. Berryhill*, 6:17-CV-6864-MAT, 2019 WL 497629, at \*5 (W.D.N.Y. Feb. 8, 2019) (holding that lack of objective evidence was proper consideration), it cannot alone form the basis of a conclusion as to the severity

of Plaintiff's headaches.

Moreover, Plaintiff's medical records are replete with records documenting her complaints of headaches throughout the relevant time period so there is no lack of evidence supporting the frequency and severity of Plaintiff's headaches.  (*See, e.g.,* Dkt. 5 at 240 (admitted to hospital for "progressive worsening of headache"); 299 ("positive for headaches every day"); 302 ("chronic headaches"); 307 ("daily headaches," prescribed diamox which "only provides two hours of relief"); 322 ("presents with headache"); 339 ("headaches unchanged"); 345 ("having global, throbbing, headaches as well"); 353 ("unchanged chronic daily headaches"); 369 ("reports her concern about her chronic headaches"); 380 ("complaining of increasing headaches with dizziness"); 847 ("notes headache pain very bothersome"); 929 ("her headache is worse"); 946 ("reports she still has a continued headache"); 966 ("patient continue to complain about 10/10 headache"); 969 ("'my headache is killing me' patient stated"); 995 ("headaches are persistent"); 1025 ("she also reports headaches for many years"); 1036 ("she has a splitting headache intermittently about 3 times per week"); 1110 ("patient complains about constant headaches"); Dkt. 6 at 195 (reported ongoing severe daily headaches"); 196 ("continues to have daily headaches"); 198 ("continues to report significant daily headaches"); 270 (history of chronic headaches); 301 ("headache has been going on for days")).  As noted, Plaintiff was prescribed medication and saw a neurologist for treatment of her headaches and it is difficult to reconcile the chronic nature of Plaintiff's complaints with the ALJ's conclusion that her headaches do not meet the *de minimis* standard at step two for a medically determinable impairment.

While the ALJ notes that Plaintiff was diagnosed with idiopathic intracranial hypertension and attributes her headaches as a potential symptom of that, he did not identify the intracranial hypertension as a severe impairment. Accordingly, this is not a case where the limitations arising from Plaintiff's headaches were clearly subsumed within another documented and identified severe impairment. *Cruz v. Colvin*, No. 15-CV-176S, 2017 WL 1190488, at *3 (W.D.N.Y. Mar. 31, 2017) ("[B]ecause the limitations arising from Plaintiff's TMJ-induced headaches were properly incorporated into the RFC, there was no error in not specifically naming TMJ as a severe impairment at Step Two."). Instead, the ALJ made a conclusory "finding that [Plaintiff's] headaches are a symptom of her established medically determinable impairments" without specifying which of the medically determinable impairments he was referring to or medical support for that conclusion. (Dkt. 5 at 18). Of course, the ALJ may not substitute his own conclusions for those of medical doctors. *See Brittney B. v. Comm'r of Soc. Sec.*, No. 21-CV-686-FPG, 2022 WL 4920902, at *2 (W.D.N.Y. Oct. 4, 2022) ("While an ALJ may render common sense judgments about functional capacity, she must avoid the temptation to play doctor." (citation and quotation omitted)); *Morshed v. Comm'r of Soc. Sec.*, No. 19-CV-725 (JLS), 2020 WL 5814655, at *5 (W.D.N.Y. Sept. 30, 2020) ("In particular, without additional explanation or discussion of the evidence, it is not clear how the ALJ arrived at the conclusion that Morshed's headaches are a "side effect" of medication.").

For these reasons, the Court cannot conclude that substantial evidence supports the ALJ's step two conclusion. The Commissioner argues that any error in identifying Plaintiff's headaches as a severe impairment was harmless because the ALJ found other

severe impairments at step two and continued through the remainder of the sequential analysis. (Dkt. 9-1 at 12). Indeed, where an ALJ fails to include a condition as a severe impairment, such failure is harmless if the ALJ proceeded through the sequential analysis taking the plaintiff's complaints of pain into account when making his RFC determination. *Williams v. Kijakazi*, No. 21CIV5252(CS/JCM), 2023 WL 119448, at *13 (S.D.N.Y. Jan. 6, 2023) ("An error at step two is harmless when an ALJ identifies other severe impairments, proceeds past step two, and considers the effects of all the claimant's impairments through the remainder of the sequential evaluation." (quotation and citation omitted)). However, the step two harmless error doctrine only applies to impairments that are deemed by the ALJ to be non-severe, and not to impairments, like Plaintiff's headaches, that an ALJ finds not medically determinable. *Lorraine Michele H. v. Comm'r of Soc. Sec.*, No. 5:21CV00013 (MAD/TWD), 2022 WL 7285345, at *4 (N.D.N.Y. Sept. 13, 2022) ("A harmless error analysis does not ordinarily apply to an ALJ's failure to find a condition to be a medically determinable impairment."), *report and recommendation adopted*, No. 5:21CV0013 (MAD/TWD), 2022 WL 4545541 (N.D.N.Y. Sept. 29, 2022); *Penny M. v. Kijakazi*, No. 8:20-CV-1334 (ATB), 2022 WL 3997745, at *6 (N.D.N.Y. Aug. 31, 2022) ("However, the ALJ's error in this case stemmed not from a step-two severity conclusion, but from the conclusion that plaintiff's right upper extremity condition was not a medically determinable impairment. [T]he step-two harmless error doctrine is inapplicable to a determination that an impairment is not medically determinable." (quotation and citation omitted)); *Penny Lou S v. Comm'r of Soc. Sec.*, No. 2:18-cv-213, 2019 WL 5078603, at *8 (D. Vt. Oct. 10, 2019) ("[T]he step-two harmless error doctrine is inapplicable to a

determination that an impairment is not medically determinable."); *Cooper v. Comm'r of Soc. Sec.*, No. 17-CV-1058-MJR, 2019 WL 1109573, at *5 (W.D.N.Y. Mar. 11, 2019) ("Although the Commissioner is correct that an error at step two may be harmless if the ALJ identifies other severe impairments at the second step and proceeds to considers any non-severe impairments at the remaining steps, . . ., the ALJ's error in this case stemmed not from a severity conclusion, but from the conclusion that Cooper's fibromyalgia is not even a medically determinable impairment.  This distinction is significant because an ALJ may credit a claimant's statements about her symptoms and functional limitations only if the impairment to which they relate is medically determinable." (quotation and citation omitted)).

Moreover, even if the harmless error standard were to apply here, any error could not be considered harmless because it is not clear in later steps of the sequential evaluation that the ALJ considered the combined effects of all impairments, including Plaintiff's headaches.  The RFC determination does not mention headaches or otherwise account for any functional limitations arising from Plaintiff's headaches.  It is not clear from the ALJ's decision if he accounted for any off-task time, which Plaintiff testified is necessary to accommodate the limitations arising from her chronic headache pain.  Such an explanation is critical in this case because the vocational expert testified that an individual with a headache who was off task for 20 percent of the workday on a consistent basis would preclude work.  (Dkt. 5 at 87-88); *Michael S. v. Comm'r of Soc. Sec.*, No. 19-CV-928S, 2021 WL 3566159, at *4 (W.D.N.Y. Aug. 12, 2021) ("Review of the evidence indicates that Plaintiff met the *de minimis* standard for Step Two for headaches to be deemed a severe

impairment.   Whether Plaintiff ultimately prevails in establishing disability due to his headaches is unclear.  The ALJ stated he considered the limiting effects of his impairments, even those not deemed to be severe, in the subsequent steps.[]  The hypotheticals posed to the vocational expert, however, did not reference headaches or the need for time off due to headaches."); *Cooper*, 2019 WL 1233686, at *2 ("The ALJ's error at step two was not harmless.  The ALJ's residual functional capacity ('RFC') finding does not appear to address any limitations that could result from plaintiff's chronic headaches, such as an inability to engage in sustained work activity during the course of a painful headache episode.  An RFC that does not sufficiently incorporate or address limitations that could reasonably result from a severe impairment is flawed and not supported by substantial evidence.").

Consequently, because the ALJ's error regarding Plaintiff's headaches seemingly affected the RFC, the Court cannot conclude that any step two error was harmless.  Remand is accordingly warranted.

## **CONCLUSION**

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings (Dkt. 8) is granted to the extent that the matter is remanded for further administrative proceedings. Defendant's motion for judgment on the pleadings (Dkt. 9) is denied.  The Clerk of Court is directed to enter judgment and close this case.

- 14 -

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:        January 30, 2023
              Rochester, New York